NEW YORK OYER AND TERMINER.     November, 1858.     Before *Mullin*, Justice of the Supreme Court.

## THE PEOPLE *v.* FERNANDO WOOD and sixty-one others.

Giving a lease of real estate belonging to the corporation of the city of New York, for a longer period than ten years, or without having complied with the provisions of the 41st section of the amendment to the charter of the city of New York, passed in 1857 (*ch.* 446), is the violation of such charter within the meaning of the 40th section of said act, and punishable as a misdemeanor.

The mayor, aldermen and councilmen of the city of New York, are officers of the city government within the meaning of the said 40th section, and, as such, are liable to indictment for willfully doing the acts forbidden by that section, and which are therein declared to be misdemeanors.

A conspiracy by such officers to give a lease in violation of the provisions of such charter, is a misdemeanor; but it is not a misdemeanor, under the said 40th section, for such officers to vote for and pass a resolution directing the comptroller of the city to lease real estate of the corporation for a longer term than ten years, such voting of itself not being an unlawful act, and the statute providing that no aldermen or councilmen shall be questioned in any other place for any speech or vote in either board.

Where a count in an indictment against the mayor, aldermen and councilmen of the city of New York, charged that the defendants "did violate and evade the provisions" of said amended charter, "by voting for and passing a resolution in due form, directing the comptroller to lease" certain real estate of the corporation to the Roman Catholic Orphan Asylum for more than ten years, the count was adjudged bad as not charging any offence under the statute.

THIS was a motion to quash the indictment, on grounds fully disclosed in the opinion of the court.

*John W. Edmonds*, for the defendant.

*Joseph Blunt* (District Attorney), for the People.

MULLIN, J.  The importance of the questions presented on the motion to quash the indictment in this case, demands a more careful examination than my engagement will permit me to make.  I have been compelled, therefore, to confine my examination to two or three of the questions raised, and those

The People *v.* Wood et al.

such as affect the substance, rather than the form of the indictment.

I entertain no doubt as to the soundness of the following positions:

*First.* That the mayor and common councilmen of this city are officers of the city government, within the true intent and meaning of the 40th section of the amendment of the charter of said city, passed in 1857.

*Second.* That, as such officers, they are liable to indictment for willfully doing, or permitting to be done, the acts specified in the said 40th section, which are therein declared to be misdemeanors.

*Third.* That the last clause of section 8 of the amendment to the charter, passed in 1857, does not exempt the mayor or the members of the common council from liability for the acts forbidden by section 40 of that act; but the approval of the mayor, or the vote of the councilmen, does not itself make him or them liable. The offences created by that section, do not consist in approving or voting, but in accomplishing the result prohibited.

*Fourth.* That giving a lease for a longer period than ten years, or without having complied with the provision of the 41st section of the act of 1857, is a violation of the charter, within the meaning of the 40th section, and punishable as a misdemeanor; and,

*Fifth.* That a conspiracy by the said officers named in the indictment, to give a lease in violation of the provisions of the charter, is a misdemeanor, and indictable as such.

I will now examine, as briefly as I am able, the several counts of the indictment, in order to ascertain whether they or either of them describe an offence under the statute referred to or at common law. I will first examine the second count. It avers, in substance, that the mayor, aldermen and commonalty is a municipal corporation, and, as such, capable of taking and holding real estate, and of granting leases of and selling the same. That, by the act of 1857, it was declared that no lease of public property thereafter to be given (except as the same might

be required by covenants of the corporation already existing), should be for a longer period than ten years, and that all leases of public property should be made by public auction, and to the highest bidder, who should give adequate security, and that it was further provided, in said act of 1857, that any officer of the city government, who should willfully violate or evade any of the provisions of the said charter, shall be deemed guilty of a misdemeanor. That on the 21st of October, 1857, Wood was mayor, and the other defendants aldermen and councilmen of said city, and officers of the city government; and that they, disregarding their duty, and with intent to violate and evade the provisions of said charter, willfully and unlawfully did violate and evade the said charter, by voting for and in passing a resolution, in due form of law, directing the comptroller to lease to the Roman Catholic Orphan Asylum certain real estate belonging to the corporation, for a period longer than ten years—to wit, for so long a time as the same should be occupied for the use of the said asylum, without causing any such lease of the said property to be put up at public auction, to be let or leased to the highest bidder. It will be seen by this abstract of the indictment, that it is not averred that any lease has ever been in fact executed or delivered by the comptroller, nor that the asylum has acquired any right, title or interest in or to the said lands. If it shall appear that these averments are, or either of them is, a necessary ingredient in the offence charged in the second count, it follows that the omission vitiates the count.

The 41st section already referred to, declares that no lease thereafter given shall be for a longer period than ten years; and, also, that all leases shall be made by public auction, and to the highest bidder, who will give adequate security. It is the violation of these provisions, with others, that is declared to be a misdemeanor. It is, then, a misdemeanor to to make a lease for a longer term than ten years; and it is also a like offence to make any lease, whether for less or more than ten years, except by public auction, and to the highest bidder," &c.

The People *v.* Wood et al.

If the second count alleged the making of a lease for a longer term than ten years, and also, that it was made without being put up at public auction, &c., it would contain the description of two distinct and independent violations of the 41st section of the charter, and consequently two misdemeanors; a count thus framed would be fatally defective. But it will be seen that it is not alleged in this count that any lease has been made; the averment is, that the *defendants did violate and evade the provisions of said act by voting for, and passing a resolution in due form, directing the comptroller to lease to the asylum.* By the statute, the offence is the giving of the lease; the offence in the indictment is the voting for a resolution authorizing the proper officer to make a lease.

Penal statutes are to be strictly construed; in other words, the offence with which the accused is charged must be brought plainly within the letter and spirit of the statute. Can it require argument to demonstrate that the passing by the common council, with the approval of the mayor, of a resolution that a lease be executed by the comptroller, is not the giving of a lease? It is said by the counsel for the People, that all the defendants could do toward giving the lease, was to pass the resolution in question. That may be, but in order to convict them under the statute, the lease must be made. The making is the very essence of the offence, and if no lease has been made, then the statute has not been violated, and of course no offence committed. The counsel for the People suggested, also, that this resolution, approved by the mayor, was a lease, within the principle decided by the Supreme Court in this district, in the case of Lowber. It was held in that case, that in case of a resolution by the common council to purchase certain real estate of Lowber, the comptroller, whose duty it was to complete the purchase, but which he refused to do, had no discretion whether he would obey the order of the common council. I have the opinion of the learned justice in this case of Lowber before me. In it he says: " The heads of departments do not hold their places independent of the legislation of the common council, *and when such legislation is not in violation of*

*law*, they have no right or power to refuse obedience to such legislation, because they may deem it unwise or improvident. On the contrary, they are only in the legitimate discharge of their duties when they comply with the legislative directions of the common council, *not passed in violation of law*." I fully concur with the learned justice in these views. If sound, they dispose of the position assumed by the counsel for the People. The comptroller is, according to the opinion in the case of Lowber, required to obey those resolutions and ordinances of the common council which they have authority to pass. But he is not bound to obey those which they have not authority to pass. If, then, the defendants could not make a lease for more than ten years, and if the resolution required the comptroller to make a lease for a longer term, he was not bound to obey, nor could the court compel him to execute such a lease. If the comptroller had executed the lease in obedience to the resolution in question, I entertain no doubt, but he would have been liable to indictment for a misdemeanor, and that the offence of the defendants would thus have been perfected. How can this resolution be called a lease, when it was not intended as such, but contemplated an instrument thereafter to be drawn which should be a lease. Again, by the city charter the common council and mayor could not make a lease; that power is expressly conferred on the comptroller, and the resolution conforms to the charter, and leaves the execution of the lease to the officer who alone could rightfully make it. Does this resolution partake in any respect of the form or nature of a lease? Does the resolution create a term in favor of the asylum? Does not it give possession or the right of possession—does it contain any agreement to let or pay rent—or any condition on which the estate, if there was one, should terminate? Could the corporation maintain an action on this resolution for the rent? In short, could either the asylum on the one side, or the corporation on the other, maintain any action or proceeding on this resolution, as and being a lease of these premises in question. It seems to me not. And if not, then

no lease for a term of more than ten years has been granted, and of course no offence committed.

If I am right in holding that the actual giving of a lease is necessary to render the defendants liable under the clause of section 41 above referred to, it is just as essential to render them liable under the clause constituting the other offence of making leases otherwise than by public auction.

I must hold, therefore, that the second count of this indictment is bad, for the reason that it does not allege or show that any offence has been committed by the defendants, or either of them, within the true intent and meaning of sections 40 and 41 of the act of 1857.

It only remains to inquire whether the first count charges an offence for which the defendants can be put upon their trial. This count is for a conspiracy. It alleges the passing of the act of 1857; that Wood was mayor, and the other defendants aldermen and councilmen of this city; that, disregarding their duty, they did willfully, maliciously and unlawfully conspire, combine, confederate and agree together to violate and evade the provisions of the said act, by certain means which were then and there in themselves criminal, viz.: by willfully, unlawfully and maliciously passing a resolution through the common council, and obtaining the sanction of the mayor thereto, directing the comptroller to execute a lease to the asylum of certain premises described in the said resolution; that the corporation owned the said premises; that those of the defendants who were aldermen willfully, unlawfully and maliciously did vote in favor of, and aid and assist in the passage of such resolution, and did obtain the approval of the board of aldermen to said resolution, and the same was duly certified by the clerk of said board; and the like charge against those of the defendants who were members of the board of councilmen; and that Wood, as mayor, did willfully, maliciously and unlawfully approve of said resolution.

A conspiracy is defined to be a combination of two or more persons to accomplish an illegal object, or a lawful object by illegal means.

The 2d Revised Statutes (874, § 8), provide that if two or more persons shall conspire to commit any offence, &c., they shall be deemed to be guilty of a misdemeanor. Section 10 provides that no agreement, except to commit arson or burglary, shall be deemed a conspiracy, unless some act under such agreement be done to effect the object thereof, by one or more of the parties to such agreement. Although by the statute an overt act must be averred in order to complete the offence, yet the gist of the offence is the corrupt agreement. The conspiracy charged or intended to be charged in this instrument, is to do an unlawful act. What is the unlawful object which the conspirators in this case are charged with conspiring to attain? The indictment alleges that it was to violate and evade the provisions of the said act (meaning the amended charter of 1857), by certain means which were in themselves criminal, to wit: by passing a resolution through the common council directing the comptroller to execute a lease, &c. The allegation that the statute was to be violated or evaded by means in themselves criminal, cannot help the count, as it is not shown what the means were, and so far as the facts alleged can aid us in determining the character of the means, they seem to be lawful. But what was the object sought to be obtained? The public prosecutor argues that that object was to give a lease for more than ten years, and without putting it up at public auction, &c. But no such object or design is charged. It is said the statute was to be violated by the passage of the resolution. If I have succeeded in showing that the passage of the resolution did not violate the statute, then certainly it was not unlawful. The count does not show by averment that it was the object of the conspiracy to create an illegal term, or to give a lease otherwise than by public auction.

The only other ground on which this count can be sustained, is by treating the allegation that the defendants conspired to violate or evade the act, sufficient without any specifications of the particular section or clause of the act the conspirators designed and agreed to violate.

The English courts have upheld indictments for conspiracies quite as vague and indefinite as this, as to the statement of the object of the conspiracy. In our own courts a more stringent and, as I think, a more just and sensible doctrine is insisted on, and the public prosecutor is required to state truly and specifically the precise object contemplated by the conspiracy. But as I can find no decision directly on the question, and as it is not entirely free from doubt, I shall hold the count sufficient in form in the respect alluded to.

As I have aimed to dispose of this case on the merits, rather than on mere technical rules of pleading, I will assume, therefore, for the purposes of the case, that conspiring for an unlawful purpose is properly charged in the indictment, and that that unlawful purpose was the violation of the act of 1857, already cited. I have declared my opinion to be that the defendants, by voting for the resolution, were not liable for a misdemeanor, as the statute made the giving the lease, and not voting for the resolution ordering the lease, the violation which is denounced as a misdemeanor. The last clause of the 8th section of the act of 1857, expressly declares that no alderman or councilman shall be questioned in any other place for any speech or vote in either board.

We must give effect to this clause, as well as to the 40th and 41st sections of the same act. In the view which I take of these provisions, there is no conflict between them. The statute not only does not seek to hold the member of the common council responsible for his vote, but expressly exempts him from all accountability therefor, unless it is the result of official corruption. He *is* responsible when he shall have aided in doing an act forbidden by law, and that act, when done, declared to be a misdemeanor.

If I am right in these views, it follows that, although the votes of the defendants may be proved to show an overt act by the conspirators, yet it is not on the principle that the votes thus permitted to be proved are illegal, but as lawful acts done in execution of the conspiracy. Giving, as I think we must do, full force and effect to the exemption from responsibility

for voting, their votes must be held lawful for all purposes. The public prosecutor cannot, therefore, rely on the defendants' votes for the resolution in question as any evidence of the unlawful confederacy ; that must be proved by other and independent evidence.

I am, therefore, of the opinion that the second count of this indictment is insufficient, for the reason that it sets forth no crime or offence.

Second, that the first count is valid in law, and that the defendants must be held to answer said count.

The motion to quash is therefore denied, so far as the first count is concerned.